REID, Judge.
Plaintiff Herman Elzy brings this suit against the defendant Triangle Timber, Inc., for workman’s compensation as a result of an injury sustained in an accident on September 16, 1960, while he was acting within the scope of his employment as a pulp wood cutter for defendant. Plaintiff sued for $9.00 for 16 weeks and $35.00 per week for a period not to exceed 384 weeks, or the full sum of $13,584.00, plus medical expenses up to the amount of $2500.00, and in the alternative for such less amounts as the Court may determine from the testimony.
The petition alleges plaintiff was working for Triangle Timber, Inc., as a pulp wood cutter using a chain saw in order to cut down a tree when the chain saw kicked back causing the chain to become disengaged and to strike plaintiff on the right hand. The petition alleges his rate of pay was $75.00 per week, and he was presently receiving compensation at the rate of $26.00 per week. Plaintiff-appellant claims total and permanent disability as a result of said injury.
The defendant filed an answer admitting the employment and the injury, and alleging plaintiff was discharged by his attending physician, Dr. H. E. Gautreaux, on December 12, 1960 and that Dr. Gautreaux was of the opinion plaintiff could resume his former occupation as of that date with the plaintiff having approximately 10% disabled flexion which should improve with work. Defendant alleged although plaintiff was able to return to work as of December 12, 1960 he was paid compensation benefits until February 1, 1961 at which time there was no question plaintiff could return to work at his usual occupation with no residual disability whatsoever. Defendant denied plaintiff was entitled to any further compensation benefits.
The case was duly tried and the District Judge with written reasons, rendered judgment in favor of plaintiff and against defendant granting plaintiff 20% of 65% of his wages for a period of 150 weeks at the rate of $31.20 per week, or the sum of $1628.00 less $494.00 previously paid, for which credit was given. Subsequently, in supplemental reasons for judgment, the Trial Judge amended the reasons for judgment to show a total award of $936.00, which is 20% of 65% of $48.00 for 150 weeks, subject to a credit of $494.00 paid. He signed a judgment for this amount and allowed Dr. Edward T. Haslam, a fee as expert witness in the sum of $150.00. From this judgment plaintiff prosecutes this de-volutive appeal. The defendant took no appeal, nor did it answer the appeal asking for any reduction in the award.
On the trial it was stipulated by the parties plaintiff’s earnings prior to the injury in question were $48.00 per week, making the weekly compensation payments due $31.20 per week. It was admitted defendant had paid plaintiff-appellant a total of $494.00 based upon a payment of *528 $26.00 per week for 19 weeks. .Plaintiff had adopted the issues set out by the Lower Court in its written reasons for judgment as follows:
“1. Is the plaintiff-appellant totally and permanently disabled as a result of the injuries which he sustained on the 16th day of September, 1960?
“2. Is the arthritic condition which exists in his wrist and fingers causally connected with the accident in question?
“3. Has he sufficiently recovered from the effects of his accident to enable him to return to his former occupation without suffering disabling pain as a result of the accident in question?”
There is no question plaintiff’s right hand was cut on the ulnar side by a chain on a chain saw used to cut down a tree. The chain became disengaged from its track and whipped back striking plaintiff’s right hand.
Elzy was treated by Dr. H. E. Gautreaux of Covington, and discharged on December 13, 1960 with a 10% disability in the flexion of his right hand. Plaintiff was also examined on November 29, 1960 by Dr. Edward T. Plaslam of New Orleans, and by Dr. Daniel C. Roirdan of New Orleans on January 31, 1961. Dr. Gautreaux and Dr. Roirdan testified for the defendant, and Dr. Haslam for the plaintiff. Dr. Gaut-reaux testified at the time of discharge plaintiff had very little loss of flexion, had fairly good movement of the hand, and he felt he had accomplished excellent results with the nature of the wound. He further testified he saw no reason why plaintiff could not return to work using an axe, or a power driven saw, or possibly driving a truck. He testified the plaintiff would have some inflammatory exudate when he used his hand and it might be a little painful, but he advised the plaintiff to exercise his hand as much as he could for his own safety. He further testified under cross-examination he felt the plaintiff had a 10% disability which should improve but that he had no further knowledge as to what results were obtained.
It further developed from the evidence that the plaintiff was a man 64 years of age, with a prior arthritic condition in his hand. Dr. Gautreaux testified this arthritic condition was not activated by any immobilization of the hand. He also testified the bones were not injured and plaintiff only had a chip fracture to the fifth metacarpal bone.
Dr. Haslam testified the plaintiff told him that he had lost the right index finger of the hand some twelve or thirteen years before when it was cut with a saw. He further testified on account of plaintiff’sage he could expect a certain amount of arthritic change in the interphalangeal joint. With regard to his prognosis and recommendations Dr. Haslam testified as follows:
“Q: Doctor, did you come to any conclusion or to any recommendations as to what this man’s condition was and also his prognosis?
“A: Well, I felt that he had sustained a little loss of sensation on the top of his hand, which was not of much significance. That he wasn’t completely recovered from this injury. He had some stiffness in his fingers. I didn’t feel that he could work. I thought he needed additionál treatment, mostly hot soaks and active exercises, as well as light use. I felt he ought to stop wrapping the elastic band around his wrist because I thought this might be contributing to some of the swelling. I felt that he needed at least two or three months of additional convalescence and I — since I couldn’t accurately make a partial disability calculation on the basis of this examination, I suggested that this be done at a later date. I thought he would get over the *529 laceration to where he could get back to work as a wood pulp cutter, but I didn’t know about the wrist as to whether that would bother him, if he attempted to do so.
“Q: Doctor, did you have occasion to treat and examine this man at a later date?
“A: Yes sir. I saw him again on the 23rd of May, 1961.
“Q: Was your physical examination of this man any different from your previous examination?
“A: Yes. There had been some improvement in the motion both in the wrist and in the fingers. I think the sensory pattern was about the same. The difference in the circumferential measurement was probably not very significant. He had gained some more motion in his wrist and in his fingers. He lacked, however, 30 degrees of pronation on the right, and 10 degrees of palmar flexion, and of dorsiflexion, and he lacked IS degrees of radial deviation. That was in so far as the wrist was concerned.
“Q: How about the fingers? Were they still having limitation of motion in the little finger and in the ring finger and in the long finger?
“A: Yes. The long finger lacked 10 degrees of flexion at the metacarpal phalangeal joint, and IS degrees of extension of the proximal interphalangeal joint, and the distal joint lacked IS degrees of flexion. The ring finger at the metacarpal phalangeal joint lacked 10 degrees of flexion, and the proximal interphalangeal joint lacked 5 degrees of extension. The distal joint lacked IS degrees of flexion. The little finger at the MP joint lacked 20 degrees of flexion, and the proximal interphalangeal joint lacked 15 degrees of extension.
“The effect of this limitation was that he could almost fully straighten out his fingers and could almost fully close them, but could not close them tightly. The long finger could touch the palm; the right and little fingers lacked about one finger’s breadth, or slightly less, of doing so.”
Dr. Roirdan testified as follows:
“Q: What was your opinion, sir?
“A: My opinion was that this patient had had a laceration that probably cut the extension tendon of the little finger and came very close to the metacarpal finigial joint of the little finger. He has a good range of motion, lacks only a few degrees of being able to get a completely tightly closed fist. The changes in the index finger are old and not related to the present condition. In my opinion the patient has now made essentially a full recovery. He should be able to return to his former occupation and should have no difficulty. It is true that he may have a little discomfort when making a tight fist over a small object for another six or eight weeks, but this should pass off, and he should have no trouble with this and should have full function of the hand.”
Dr. Riordan emphatically testified plaintiff could return to work as of the date of his examination as a wood cutter.
Upon questioning on cross-examination concerning the aggravation of arthritis he testified:
“Q: Well, wouldn’t this arthritic condition, if it did become activated, *530 cause this man pain when he would be using his hand in doing heavy manual work?
“A: It may give him some discomfort, but I don’t think that this is, at least in my opinion, is the type of arthritis that we think of as being active in the sense that you would with the rheumatoid arthritis, where it is an extensive destructive process of joints and tendons surrounding the joints. This is the wear and tear type of arthritis, and I don’t think of this as having any periods of activity, and I don’t think that the injury that this patient had would in any way make this degenerative process any more active in the wrist joint or in the thumb joint, because I don’t believe that they were involved in this laceration that the patient had.”
The Judge of the Lower Court in his written reasons found:
“It developed that Herman Elzy has not worked or attempted to work since he was discharged by Dr. Gautreaux on December 12, 1960. He states that he didn’t think he could work because of the condition of his hand.
“It further developed that Elzy has an arthritic condition of the wrist which considerably hampers the use of his hand, and which is probably a major contributing cause of his inability to work. However, plaintiff was not able to make out by preponderance of the evidence any causal connection between this arthritic condition and the accident which happened September 16.
“It is obvious from the testimony of all of the physicians, as well as from the Court’s visual examination of Elzy’s hand, that he has a loss of flexion therein to some extent. Dr. Roirdan evaluated the loss of use of his hand at three to five percent as of February 1st, of this year. Dr. Gautreaux evaluated the loss of use as approximately ten percent as of the date of discharge on December 12, 1960. Dr. Haslam evaluated the loss of use of the hand due to the loss of flexion of the fingers at about thirty-five percent.
“Both Dr. Gautreaux and Dr. Roirdan felt that Elzy could return to work, and although he might experience some discomfort for a short period of time, that the work would eventually alleviate the conditions in his hand and that it should be restored to virtually the same condition in which it was prior to the accident. Dr. Haslam was not sure this man could be rehabilitated by working now, but he based his opinion on the disability in the wrist rather than the loss of flexion in the fingers of the hand.
“Considering all of the testimony heard in the case, I am of the opinion that Herman Elzy is in good faith in all of his contentions. However, I do not believe that the trouble in the wrist is causally connected with the accident which happened on September 16th.”
From the examination of the record we believe the plaintiff at the time of the trial still had some disability as a result of the injury. The Trial Court gave him 20% of 65% of his wages for a period of 150 weeks. We feel that this award does ample justice to the case.
The defendant-appellee complains in his brief that the award of $150.00 as expert witness fee to Dr. Haslam is excessive, however, the defendant-appellee took no appeal and there is no answer in the record asking for an amendment to the judgment.
For the foregoing reasons the Court is of the opinion that the judgment of the Lower Court is correct and should be affirmed.
Affirmed.